# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MSE DISTRIBUTING, INC., AUTOLADY, INC. ) | |
| JOHN SULLIVAN, dba GMF ENTERPRISES ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CASE #: 1:10-cv-00880 |
| ) | |
| SOUTHWEST REINSURE, INC. ) | |
| ) | |
| Defendant. ) | |

## REPLY IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD

Plaintiffs address Defendant Southwest Reinsure, Inc.'s (SWRE) six arguments in the order they appear in SWRE's Response:

**1. Plaintiffs did not ignore an obligation under the FAA.**

SWRE argues Plaintiffs should have first moved to compel arbitration under Section 4 of the FAA. Resp.9. Section 4 provides that a party who faces an opponent who is unwilling to arbitrate "<u>may</u> petition . . . for an order" compelling arbitration. SWRE's argument has been repeatedly rejected in federal courts based on the statute's clear language.[1] The Tenth Circuit held: "It does not follow, however, that § 4 must be resorted to in every case where one party refuses to proceed with the arbitration. It is permissive by its terms." <u>Standard Magnesium Corp. v. Fuchs</u>, 251 F.2d 455, 458 (10th Cir. 1957). The FAA did not obligate Plaintiffs to come to court before proceeding to arbitration.

SWRE did not ask this Court to stay the arbitration action before it began even though the FAA gives it a mechanism for doing so. SWRE did ask the New Mexico state court to stay the

---

[1] <u>Val-U Const. Co. v. Rosebud Sioux Tribe</u>, 146 F.3d 573, 580 (8th Cir. 1998); <u>Bernstein Seawell & Kove v.</u>

1

arbitration. But it waited until the last minute to do so. On June 23, 2010, SWRE signed for receipt of Plaintiffs' letter initiating the arbitration action. Ex.1. SWRE then received five more separate notices relating to the pending arbitration case, which are attached hereto as Exs.2-6. In spite of receiving 6 notices, SWRE waited for two months and ten days to file a declaratory judgment action/TRO motion in state court seeking a stay of arbitration. Exs.7, 8. SWRE filed this request six days (2 business days) before the arbitration was scheduled to begin. Chief Judge Baca listened at length to the same arguments that SWRE is making here and rejected SWRE's stay request. Exs.9, 10. Thus, the arbitration appropriately went forward.[2]

**2. There was a valid agreement to arbitrate between the parties.**

SWRE next argues there was no valid arbitration agreement. Resp.11. First, this is not a valid basis for disputing the award post-hearing. Under the FAA, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." Hall Street Associates, LLC v. Mattel, 552 U.S. 576, 582 (2008). Disputes over arbitrability should be taken up before arbitration begins. "[A]fter an award has been entered, section 4 is no longer in play; sections 9 and 10 are, and section 10 does not permit the person resisting enforcement of the award to go back and litigate the question whether there was an agreement to arbitrate." Comprehensive Accounting Corp. v. Rudell, 760 F.2d 138, 140 (7th Cir. 1985).

SWRE unsuccessfully moved to stay the arbitration in state court. It argued that the dispute was not arbitrable. After listening until SWRE had nothing else to say, Chief Judge Baca refused to stay the arbitration: "It [seems] clear to me that there is no dispute as to the validity of

---

Bosarge, 813 F.2d 726, 733 (5th Cir. 1987).
[2] 1 Alt. Disp. Resol. § 8:42 (3d ed.) ("The arbitrator may hear and decide the matter at the hearing despite a party's failure to appear[.]")

the arbitration agreement." Ex.9, p.24. The FAA will not allow SWRE another bite at that apple.[3] SWRE also argues "commissions from vehicle service contracts are not covered by the arbitration provision." Resp.13. SWRE begs the Court to second-guess the arbitrators and to usurp their authority to review the contract. The arbitration agreement says: "If an irreconcilable difference of opinion should arise between the parties as to the interpretation of this agreement and the dispute cannot be resolved informally, the dispute shall be settled by arbitration." Exs.11-13, ¶ 17. Thus, the parties unequivocally agreed to have the arbitrators interpret the agent agreement. Whether the agreement obligates SWRE to pay Plaintiffs commissions requires interpretation of the agent agreement. SWRE urges this Court to rip the arbitration clause out of the contract, ignore the award, and substitute its interpretation of the contract in place of the arbitrators who heard testimony and examined documents. The FAA will not permit it.[4] Moreover, SWRE asks the Court to ignore clear language in the agent agreement that required SWRE to pay Plaintiffs for their work: 1) in paragraph 13, SWRE "agrees to pay" certain amounts and 2) paragraph 11 refers to "commissions agent will be receiving for each account agent signs up." Exs.11-13. Chief Judge Baca rejected this exact argument. Exs.9, 10. The parties' arbitration agreement clearly encompassed compensation matters.

SWRE's next argument is that Plaintiffs did not meet the conditions precedent in the arbitration agreement. Resp.15. This is not a matter for the Court, but is for the arbitrators to

---

[3] SWRE conceded that the agent agreements were valid and even referred to the arbitration agreement in its July 26, 2010 letter: "[W]e are optimistic that we might be able to review/discuss the matters which have led to this point . . . and hopefully come to an agreement outside of arbitration." Ex.14. Indeed, SWRE proved by its actions that it had agreed to arbitrate the dispute when it showed up at the arbitration and made an unsuccessful motion to adjourn. Its partial participation in the arbitration proves that SWRE knew it had agreed to arbitrate.
[4] When parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator, not by a federal or state court. Preston v. Ferrer, 552 U.S. 346, 349 (2008); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006).

3

decide. El Dorado School Dist. v. Continental Casualty Co., 247 F.3d 843, 846-47 (8th Cir. 2001) (arbitrators have authority to settle threshold procedural arbitrability questions such as whether conditions precedent were satisfied).  In any case, all four purported "conditions precedent" were clearly met here.  First, there was clearly an irreconcilable difference of opinion between the parties.[5]  When SWRE suggested in its July 26 letter that there was no irreconcilable difference,[6] Plaintiffs' counsel wrote SWRE back on August 4 describing precisely why there was an irreconcilable difference.  Ex.3.  SWRE did not respond to this letter.  If there was no difference of opinion, SWRE could have paid Plaintiffs their commissions; it did not.  Second, as discussed above, SWRE had clear notice that the difference of opinion related to interpretation of the agent agreements.  Exs.1, 3.  Third, Plaintiffs detailed in their August 4 letter their unsuccessful attempts to get SWRE to change its mind.[7]  Finally, Plaintiffs submitted their claims to the arbitrators, in strict compliance with the procedures set forth in SWRE's agreements.

**3. Plaintiffs properly notified SWRE of their claim, and the arbitrators' refusal to postpone the hearing was appropriate.**

SWRE argues the agents failed to notify it of the exact nature of their grievance, citing state law requirements.  The FAA, not state law, provides the only grounds upon which to vacate the arbitration award.  Inadequate notice is not one of these grounds.  Gingiss Int'l, Inc. v.

---

[5] SWRE's decision to stop paying commissions to Plaintiffs cut their total monthly compensation by over ninety-five percent.  This is like an attacker cutting off the victim's arm and complaining that he cannot understand why the victim is so upset.  Here, too, SWRE does not have the gumption to put anyone under oath to make such a ridiculous suggestion.  SWRE tried this argument before Judge Baca and again in front of the arbitrators, all of whom rejected it.

[6] SWRE's July 26 letter proves how ridiculous SWRE's "no differences" argument is because SWRE offers to negotiate an agreement over the differences.

[7] Plaintiffs' Counsel explained on the record in state court that he called and left a message for Ms. Torres in response to her letter and never heard back from her or anyone else at SWRE.  Ex.9, p.23.

4

Bormet, 58 F.3d 328, 332 (7th Cir. 1995) ("9 U.S.C. § 10(a) provides the exclusive grounds for setting aside an arbitration award under the FAA. Inadequate notice is not one of these grounds, and the Bormets' claim therefore fails."); Borden v. Hammers, 941 F. Supp. 1170, 1173 (M.D. Fla. 1996) (attendance at the arbitration through counsel waives claims of inadequate notice required by parties' contract). In any case, in two separate letters, as is described above, Plaintiffs explained the nature of the dispute. Contrary to what SWRE suggests, the agent agreement does not (indeed many arbitration agreements do not) require the filing of a formal complaint per the FRCP or court-like discovery. SWRE never sought further clarification from Plaintiffs because it knew good and well what the dispute was about. SWRE also complains of the arbitrators' failure to postpone the arbitration hearing. The FAA does permit vacation of an award if "arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown[.]" 9 U.S.C. § 10(a)(3) (emphasis added). However, SWRE had ample notice that the Plaintiffs were seeking arbitration. SWRE received the first notice on June 23, over two months before the date eventually set for arbitration. Yet, SWRE waited until the morning the arbitration began to make a motion to adjourn. The Tenth Circuit noted "the standard of review of arbitral awards 'is among the narrowest known to the law,'" and that "a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462-63 (10th Cir. 1995). In similar circumstances, the Tenth Circuit refused to allow a party to profit from its own delay.[8]

---

[8] The Court stated: "Defendants failed to demonstrate sufficient cause for postponing the hearings, and the arbitrator was clearly acting within the scope of his discretion in not continuing the hearing and conducting it without Defendants or defense counsel present. . . . Defendants waited until the day of the pre-hearing conference to request a continuance-less than a week before the hearings' commencement." ARW, 45 F.3d at 1464; see also El Dorado, 247 F.3d at 848; 2 Domke on Com. Arb. § 29:15 (2010).

Id.

**4. The arbitrators were qualified pursuant to the agent agreements.**

SWRE also complains that the three arbitrators were not insurance company executives as required by the parties' agreements. SWRE knew the identity of the three arbitrators well before the hearing (Mr. Hurst's selection on June 21, Mr. Dulick's on July 7, and Mr. Goodside's on August 19). Exs.1, 2, 5. Yet, at no point in the process, including at the arbitration itself when the arbitrators identified themselves as executive officers of insurance companies, did SWRE object to their qualifications. SWRE raised this objection for the first time when it filed its Response on October 5. SWRE has thoroughly waived this objection.

If SWRE believed that the arbitrators were not selected in accord with the agent agreements, SWRE should have availed itself of FAA section 5, which provides a remedy in advance of arbitration if a party did not follow the method prescribed in the arbitration agreement.[9] Even if SWRE had not waived this point, it has not established that the arbitrators were unqualified. SWRE itself states that the term "executive officer" focuses on "management control and authority over the operations of the business." Resp.20. SWRE then argues Mr. Dulick, "Manager of Operations" for Chicago Title's Kansas City operations, does not meet this description. SWRE also argues Mr. Goodside is not an "executive officer" because he is only one of several vice presidents at Chicago Title and that Mr. Hurst is not an executive officer even though SWRE concedes that he is a vice-president. It is frivolous to suggest that a vice-president is not an executive officer. See Sheldon Steel Corp. v. Standard Fruit Co., 219 F. Supp. 521, 523

---

[9] "Then upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . . ." 9 U.S.C. § 5. Instead, SWRE remained silent for over two months, raising this objection for the first time in response to Plaintiffs' motion to confirm the arbitration award. This is not permitted. WellPoint v. John Hancock

(D. Del. 1963). The contract does not limit service to presidents.

**5. Plaintiffs did <u>not</u> obtain an arbitration award against the wrong party.**

SWRE argues the agent agreements were between the Plaintiffs and "SouthwestRe," and that it ("Southwest Reinsure, Inc.") is not a party. Instead, it claims that "Southwest Reinusre" [sic] merely "administered the various insurance policies." However, the agent agreements specifically identify "SouthwestRe" as the administrator of the policies. SWRE correctly points out that Plaintiffs have consistently referred to a contractual dispute with "Southwest Reinsure, Inc.," in correspondences dated June 21, July 6, August 4, September 3, and September 6, and that the arbitration award was directed against "Southwest Reinsure, Inc." Now, for the first time since the initial arbitration demand over three months ago, SWRE contends that "Southwest Reinsure, Inc." is not a party to the contracts. This contention, at this late date, is ridiculous under the circumstances. When Plaintiffs' counsel directed its original June 21 arbitration demand to "Southwest Reinsure, Inc.," he received a response from SWRE on letterhead displaying the logo "SouthwestRe," and expressly acknowledging the existence of the contracts, with no mention then or in subsequent correspondence that there was a question as to who the contracting parties actually were. Ex.14. Even when SWRE sought a stay, it made no mention of any dispute over the identity of the contracting parties. Its complaint stated that Plaintiffs' June 21 demand letter "submitted a letter to SouthwestRe in which they demand arbitration." Ex.7, Complaint ¶ 28. Indeed, at the TRO hearing, SWRE's attorney repeatedly referred to "SouthwestRe Insurance" as the party to the agency agreements, again never suggesting that Plaintiffs had not identified the proper party to their agreements. Ex.9. Even at the arbitration

---

<u>Life Ins.</u>, 576 F.3d 643, 647 (7th Cir. 2009); <u>Brook v. Peak Intern.</u>, 294 F.3d 668, 673-74 (5th Cir. 2002).

hearing itself, SWRE's counsel never claimed that the party identified by the Plaintiffs was not a party to the contracts. At no point in the parties' years-long dealings has SWRE ever made a distinction between "Southwest Reinsure, Inc." and "SouthwestRe." SWRE holds itself out to the public, as evidenced by its own website, as "Southwest Reinsure" and "SouthwestRe."[10] Not once in the months before its October 5 Response did SWRE dispute that "Southwest Reinsure, Inc." was a party to the agreements.

**6. The arbitrators were <u>not</u> partial or corrupt.**

Finally, SWRE claims that the arbitrators were partial or corrupt as evidenced by (1) the amount of the award, (2) the fact that Plaintiffs provided the arbitrators with materials at the hearing (the "script" SWRE refers to), (3) ex parte communications between Plaintiffs' counsel and the arbitrators, (4) the fact that Plaintiffs selected the arbitrators, (5) the arbitrators' lack of required qualifications, and (6) the fact that the arbitrators were from Missouri. As a preliminary matter, SWRE knew of half of these objections (4, 5 and 6) well before the arbitration took place and yet failed to raise these grounds until now. These arguments are therefore waived. See Rai v. Barclays Capital, 2010 WL 2465501, *3 (S.D.N.Y. June 15, 2010) (publication pending).[11]

The size of the arbitration award is not grounds for vacating the award. Lagstein v. Certain Underwriters at Lloyd's, 607 F.3d 634, 640 (9th Cir. 2010). SWRE claims that the

---

[10] Even if SWRE were correct in claiming that it did not sign the agreements, it should be bound by the arbitration clause by equitable principles of waiver and estoppel. See generally 9A Fletcher Cyc. Corp. § 4724.10 (2010) ("[A] non-signatory party may be subject to an arbitration clause in a corporate contract, through traditional principles of state law that allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."); Hicks v. Bank of America, 2007 WL 521175, *5 (10th Cir. Feb. 21, 2007) (party was properly compelled to arbitrate tort claims, even though they arose from enforcement lawsuit filed by subsequent purchaser of note, given abundant evidence that original purchaser of note and subsequent purchaser operated as alter-egos).

[11] The Court stated: "Where a party has knowledge of facts possibly indicating bias or partiality on the part of the arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection."

amount awarded evidences partiality because it is "substantially disproportionate to the actual damages." Resp.23. However, SWRE refused to stay for the arbitration to hear Plaintiffs' proof on damages and refused to even look at the notebook of Exhibits that were given to the arbitrators and offered to SWRE. Nowhere in its brief does SWRE indicate what the "actual damages" are, and in fact has argued throughout this dispute that it lacked any knowledge of how much money was involved. See Texas Eastern Transmission v. Barnard, 177 F. Supp. 123, 129 (E.D. Ky. 1959) ("Here there is absolutely no proof of partiality. Contrary to the contention of counsel for plaintiff in their brief, the size of the awards cannot be taken as proof of partiality in view of the fact that there is no proof in the record impeaching the reasonableness of such awards."), rev'd on other grounds, 285 F2d 536 (6th Cir. 1960). In the only case cited on this point by SWRE, the court vacated the award because it was too small.

SWRE also alleges that Plaintiffs provided the arbitration panel "with a script to read during the proceeding that clearly demonstrated that the arbitrators were only present to rubber stamp the Agents' allegations." Resp.23. Yet, SWRE provides zero proof to support this allegation nor does it cite anything the arbitrators said that indicated any sort of bias. The only case cited by SWRE on this point is Matter of Arbitration Between Town of Silver City and Silver City Police Officers Ass'n, 857 P.2d 28 (N.M. 1993), a case in which the court rejected the very argument SWRE makes. See id. at 34.

SWRE's third allegation of partiality is its false and completely unsupported assertion that Plaintiffs' counsel had ex parte communications with the arbitrators, including argument. Resp.23. As the correspondence in this case indicates, SWRE was in fact copied on all communications with the arbitrators, and Plaintiffs had no substantive ex parte communications

9

with the arbitrators other than to ask about their ability to serve as arbitrators, contact clearly envisioned by the contract. See Barcume v. City of Flint, 132 F. Supp. 2d 549, 557 (E.D. Mich. 2001) (arbitrator did not demonstrate "evident partiality" towards prevailing parties, despite ex parte communications between party's counsel and arbitrator and fact that party owed arbitrator fees, absent specific facts indicating improper motives on part of arbitrator). SWRE claims that Plaintiffs "hand-picked the arbitrators." Resp.23. Plaintiffs acted strictly in accord with the procedure mandated by SWRE's contracts. They picked the first arbitrator, and then when SWRE failed to pick the second arbitrator, Plaintiffs had to do so in accordance with the contract. The two arbitrators then selected the third arbitrator–again pursuant to the procedure specified by SWRE. SWRE offers no factual or legal support for its amusing claim that the act of selecting an arbitrator is evidence of that arbitrator's bias.

In addition, SWRE complains that the arbitrators were unqualified, which is refuted above (and which, even if true, would not be evidence of partiality). SWRE also finds fault with the fact that the arbitrators are from Missouri, again a function of their own failure to comply with the selection procedure in their contracts. The third arbitrator, who was selected by the other arbitrators, Mr. Goodside, lives in Texas. In any case, a person's state of residence is not evidence of partiality in matters other than college football.

**Conclusion**

SWRE cannot legitimately complain that an arbitration process that it devised and refused to participate in was unfair and did not afford due process. SWRE is like the child who set the rules of a game but cried that the rules were not fair when he lost. SWRE conceded on the record that it drafted the agent agreements containing the arbitration clause. Ex.9, p.9-10.

10

Indeed, SWRE designed the arbitration process to suit itself by requiring Plaintiffs and the arbitrators to travel to Albuquerque for the arbitration hearing. Exs.11-13, ¶ 17. SWRE's arbitration process has tight time deadlines. For example, a party who failed to designate an arbitrator within 10 days loses its right to select an arbitrator and allows the other party to select a second arbitrator. Id. The reason that SWRE is now telling this Court that the arbitration process was so unfair is because SWRE missed its own time deadlines, which gave Plaintiffs the right under the arbitration agreement to select the second arbitrator. SWRE's Response concedes that it missed its own deadlines.[12] Resp.4. This is certainly no reason to overturn an arbitration award that came from a process that SWRE itself designed. If the shoe were on the other foot, SWRE would most certainly be pointing to the plain language of the arbitration agreement and reminding the Court that this was the process to which the parties agreed. SWRE awkwardly attacks an arbitration process that it put into its form agent agreements. SWRE tries to present fact allegations (with no supporting affidavits) that it refused to present to the arbitrators. The Tenth Circuit issued this stark pronouncement:

> [W]e recently took the opportunity to warn those spurned by an arbitration award that we will impose sanctions in appropriate cases. . . . If we permit parties who lose in arbitration to freely relitigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less. If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored

---

[12] SWRE tries to excuse its lapse by suggesting that it misrouted the arbitration notice. This unsupported claim is suspect. SWRE never mentioned word of a routing error in the state court papers or TRO hearing nor did SWRE raise it in its motion to the arbitration panel. SWRE does not dispute that it received six separate notices relating to the arbitration action. SWRE would have all of the consequences of their "oops" to fall on the heads of Plaintiffs who have invested months of their lives and lots of money in the arbitration. SWRE deliberately ignored this process. And then on July 26 when it did respond, SWRE did not say, "hey, we had an internal problem here—it got misdirected—we are sorry." Regardless of whether the claim of misdirected mail is true, the contract put burdens on the parties to take certain actions in a certain amount of time and it does not contain a provision that says, "if we make an internal error and forget about it" we get a break.

sooner rather than later.

DMA Int'l, Inc. v. Qwest Communications Int'l, Inc., 585 F.3d 1341, 1346 (10th Cir. 2009) (citations omitted). SWRE is going even two better than the party sanctioned in DMA—SWRE is challenging an arbitration process it devised and it is attempting not to retry its case in court but to try it for the first time after refusing to present its case to the arbitrators. Plaintiffs are not asking for sanctions here; they just want to collect the arbitration award before the man who owns and controls SWRE spends what Defendant owes Plaintiffs.

The Tenth Circuit resolutely favors and gives deference to arbitration awards. Foster v. Turley, 808 F.2d 38, 42 (10th Cir. 1986) ("Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award, and courts must exercise great caution when asked to set aside an award.") (quoting Ormsbee Dev. Co. v. Grace, 668 F.2d 1140, 1146-47 (10th Cir. 1982); DMA, 585 F.3d at 1344 ("Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances."). Plaintiffs respectfully request that the Court affirm the arbitration award.

**Dated: October 19, 2010**

Respectfully submitted,

\_\_\_\_/s/_____

| | |
|---|---|
| Matthew V. Bartle | Arlyn G. Crow |
| Graves Bartle Marcus & Garrett LLC | Arlyn G. Crow, PC |
| 1100 Main Street, #2700 | 1001 5th Street NW |
| Kansas City, Missouri 64105 | Albuquerque, NM 87102 |
| **Counsel for Plaintiffs** | **Counsel for Plaintiffs** |