**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MSE DISTRIBUTING, INC., AUTOLADY, INC.,
JOHN SULLIVAN, d/b/a GMF ENTERPRISES,

              Plaintiffs,

      vs.                                     Civil No. 10cv880 RLP/WDS

SOUTHWEST REINSURE, INC.,

              Defendant,

     consolidated with

SOUTHWEST REINSURE, INC., and
SOUTHWEST RE, INC.,

              Plaintiffs,

      vs.                                     Civil No. 10cv935 RLP/WDS

MSE DISTRIBUTING, INC., AUTOLADY, INC.,
and GMF ENTERPRISES,

              Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the competing motions of the parties.  MSE

Distributing, Inc., Autolady, Inc. and John Sullivan, d/b/a GMF Enterprises (referred to collectively

as "Agents"), move the court for an order confirming an arbitration award in their favor, and against

Southwest Reinsure, Inc.  (Docket No. 1, 10cv880).  Southwest Reinsure, Inc., and Southwest Re,

Inc. move the court for an Order vacating that award.  (Docket No. 34, 10cv880).  Southwest

Reinsure, Inc. is a wholly-owned subsidiary of Southwest Re, Inc.[1]  Where designated by specific

name in documents presented to the Court, these entities will be referred to by these names.  If

---

[1] ¶ 14, Docket No 7, 10cv880.

referred to collectively they will be referred to as SWRE.

The Agents also move to dismiss the Amended Complaint filed against them by SWRE in a state court action that has been removed to this Court.  (Docket No. 8, 10cv935).  The amended complaint mirrors SWRE's motion to vacate the award in many respects and asserts additional causes of action.

## Background

Southwest Reinsure, Inc., and Southwest Re, Inc. are New Mexico corporations with their principal places of business in New Mexico.[2]  Agent MSE Distributing, Inc. is an Arkansas corporation that does business in New Mexico and Arkansas.[3]  Agent Autolady, Inc. is an Alabama corporation doing business in New Mexico and Alabama.[4]  Agent GMF Enterprises, Inc. is a Michigan corporation doing business in New Mexico and Michigan.[5] Between December 2004 and October 2007, an entity designated as  "Southwest Re" entered into identical but separate "Agent Agreements" with each Agent.[6]  Pursuant to these agreements, the Agents marketed and serviced "Service Contracts, Credit Insurance, and Ancillary Products to automobile dealerships" on behalf of Southwest Re in exchange for commission payments.[7]  This suit involves the construction and implementation of an arbitration clause found in those agreements. The arbitration clause states:

---

[2]¶¶ 7, 8, Docket No. 7, 10cv935.

[3]¶9, Docket No. 7, 10cv935.

[4]¶10, Docket No. 7, 10cv935.

[5]¶11, Docket No. 7, 10cv935.

[6]Exhibits A, B and C, Docket No. 1, 10cv880; ¶46, Docket No. 7, 10cv935.

[7]Id.

17.     **ARBITRATION**

If an irreconcilable difference of opinion should arise between the parties as to the interpretation of this agreement and the dispute cannot be resolved informally, the dispute shall be settled by arbitration.  In such cases, the parties will submit their differences to three (3) arbitrators.

One arbitrator shall be chosen by the AGENT, one by (Southwest Re) and an umpire shall be chosen by the arbitrators.  In the event that they are not able to agree on the choice of umpire, the appointment shall be left to the President of the American Arbitration Association, or its successor organization.  The Arbitrators must be executive officers or retired officers of insurance companies unaffiliated to the two parties to this Agreement or their affiliates.  The arbitration hearing will take place in Albuquerque, New Mexico at a time and place to be specified by notice in writing given by the third arbitrator at least 10 days before such hearing date.

Arbitration may be initiated by either AGENT or (Southwest Re) (the petitioner) demanding arbitration in writing delivered by certified mail or in person to the other and naming its arbitrator.  The other party (the respondent) shall have ten (10) days after receipt of such demand within which to designate its arbitrator by writing similarly delivered to the petitioner.  If respondent does not name its arbitrator within the specified ten (10) days, the petitioner may designate the second arbitrator and respondent shall be bound by such designation.  The third arbitrator shall be chosen by the two arbitrators named by the parties within ten (10) days after notice to the two of their designation as arbitrators and the arbitration shall be held in the place hereinafter set forth withing twenty (20) days after the appointment of and notice to the third arbitrator.

The arbitrators shall not be bound by any rules of law.  They shall decide the dispute by a majority vote and there shall be no appeal from their written decision.  The costs of the arbitration shall be shared equally by both parties unless the arbitration award shall direct otherwise.

All written demands for arbitration and designations of arbitrators shall be effected by certified mail, return receipt requested, or by delivery via overnight courier, or by delivery in person to the office of AGENT or (Southwest Re).

On June 21, 2010, the Agents mailed a certified letter to Southwest Reinsure, Inc. demanding arbitration, stating "[t]he difference of opinion relates to SWRE's obligation to pay commissions to the Agents after terminating them."  In conformity with the arbitration clause, the demand letter

3

also designated Mr. Blake Hurst as the Agents' arbitrator.[8]  The address to which the demand letter was sent is the address specified in the Agent Agreements for notice to Southwest Re.[9]   The demand letter was delivered on June 23, 2010.[10]  SWRE did not respond to the demand letter.[11]

On July 7, 2010, the Agents mailed a second certified letter to Southwest Reinsure, Inc., referencing the demand letter and SWRE's failure to respond to it.  In conformity with the arbitration clause, the Agents named Mr. Thomas Dulick as the second arbitrator.[12]

On July 26, 2010, Carmen Torres of Southwest Re, Inc., acknowledged receipt of the June 21, 2010 demand letter, and stated that the company was unaware of any disagreement regarding the Agency Agreements or the interpretation of the Agreements.  She requested discussions in order to "come to an agreement outside of arbitration" and requested "other information . . . which may help us understand where the perceived disagreement exists."[13]

The Agents, through their counsel, responded to Ms. Torres' letter on August 4, 2010 stating in detail the basis for seeking arbitration and identifying managers at SWRE who had information related to the dispute.  The Agents also stated that while they would discuss resolution of the matter outside of arbitration, they would not cancel the arbitration process.[14]

---

[8]Ex. D, Docket No. 1, 10cv880; Ex. A, Docket No. 8, 10cv935.

[9]Compare p. 1 of Exs. A, B and C, Docket No.1, to Ex. D,  10cv880.

[10]Ex. D, Docket No. 1, 10cv880.

[11]Southwest Reinsure, Inc., represents that the Agents' demand letter "was misdirected within Southwest Reinsure and was not received by the correct individual" until after the second arbitrator was named (i.e., after July 7, 2010).  Docket No. 5, p. 4, 10cv880.

[12]Ex. E, Docket No. 1, 10cv880; Ex. A, Docket No. 5, 10cv880; Ex. B, Docket No. 8, 10cv 935.

[13]Ex. A, Docket No. 5, 10cv880; Ex. 1, Docket No. 5, 10cv880; Ex. C, Docket No. 8, 10cv935.

[14]Ex. B, Docket No. 5, 10cv880; Ex. 2, Docket No. 5, 10cv880; Ex. D, Docket No. 8, 10cv935.

On August 6, 2010, the Agents wrote to Mr. Dulick and Mr. Hurst, advising them that they had been designated as arbitrators, providing them with contact information for SWRE (Ms. Torres) and requesting that they designate the third arbitrator as provided for in the Arbitration Agreement. Ms. Torres was copied on this letter.[15] Mr. Dulick and Mr. Hurst designated Mr. Robert Goodside as the third arbitrator in a letter dated August 19, 2010, and advised him that pursuant to the terms of the Arbitration Agreement, "the arbitration hearing must be convened within 20 days of your receipt of this notice" and "must be held in Albuquerque, New Mexico." Southwest Reinsure Inc. (Ms. Torres) and the attorney for the Agents were copied on this letter.[16]

The following day, August 20, 2010, Mr. Goodside sent notice via Federal Express scheduling the arbitration for September 8, 2010, in Albuquerque. This notice was sent to Southwest Reinsure, Inc. (Ms. Torres), the attorney for the Agents, and to the other arbitrators.[17] The letter was received by Southwest Reinsure, Inc., on August 23, 2010.[18]

On September 2, 2010, Southwest Re, Inc. informed the Agents that it would not participate in the arbitration.[19] On the same day it filed a Complaint for Declaratory Judgment and Injunctive Relief in the Second Judicial District Court, County of Bernalillo, State of New Mexico against the Agents, seeking in part to enjoin the arbitration proceeding scheduled for September 8, 2010.

---

[15]Ex. 4, Docket No. 9, 10cv880; Ex. E, Docket No. 8, 10cv935.

[16]Ex. F, Docket No. 1, 10cv880; Ex. F, Docket No. 8, 10cv935.

[17]Ex. G, Docket No. 1, 10cv880, Ex. G, Docket No. 8, 10cv935.

[18]FedEx assigned tracking number 872820845686 to the letter sent to Ms. Carmen Torres at Southwest Reinsure, Inc. Mr. W. Harkins signed for this letter on August 23, 2010. Mr. Harkins signed for the original demand letter sent to Southwest Reinsure, Inc., in June 2010. Ex. G and D, Docket No. 1, 10cv880.

[19]Ex. 7, ¶41, Docket No. 9, 10cv880; Ex. 1, Docket No. 1, 10cv935.

Southwest Re, Inc., asserted in its Complaint that the dispute at issue was not subject to arbitration.[20]

The following day Southwest Re, Inc. applied for a temporary restraining order ("TRO") to enjoin

the arbitration hearing from proceeding.[21]  The Application for the TRO cited to and relied upon

provisions of the New Mexico Uniform Arbitration Act, NMSA 1978, § 44-7A-1 et seq.  NMSA

1978, Section 44-7A-8(b) states:

> On motion of a person alleging that an arbitration proceeding has been initiated or
> threatened but that there is no agreement to arbitrate, **the court shall proceed
> summarily[22] to decide the issue**.  If the court finds that there is an enforceable
> agreement to arbitrate, it shall order the parties to arbitrate. (Emphasis added).

A hearing on the motion for TRO was held before State District Court Judge Ted Baca on

the morning of September 8, 2010, the day scheduled for the arbitration hearing.[23]  At that hearing,

counsel for Southwest Re, Inc. admitted that he assumed "SouthwestRe Insurance" had drafted the

Agent Agreements, and that the parties had operated under the Agreements since they had been

signed without any questions arising as to their validity.  The counsel then stated that his client

objected to the arbitration were because it didn't know what part of the Agent Agreement the Agents

claimed had been breached and didn't have information regarding the Agents' claim for damages.[24]

However, at the same hearing, counsel for Southwest Re identified the basis of the dispute as "a

---

[20]"Southwest Re seeks a determination by the Court as whether the arbitration provision within the
Documents, and each of them are binding and enforceable contractual provisions."  Ex. 7, Docket No. 9,
10cv880, ¶49: "Southwest Re seeks a determination from the Court whether there is an enforceable agreement
to arbitrate." Id., ¶50.

[21]Ex. 8, Docket No. 9, 10cv880.

[22]Summary, adj. (15c) 1. Short; concise. . . 2. Without the usual formalities . . .3.  Immediate; done without
delay. . . .summarily.  Black's Law Dictionary (9th ed. 2009).

[23]Ex. 9, Docket No. 9, 10cv880.

[24]Ex. 9, pp. 9-11, Docket No. 9, 10cv880.

change in company policy that altered the manner in which commissions were paid, and other terms of the arrangement between the company and its agents (that had) changed over the course of their relationship."[25]

     After hearing arguments and reviewing the Agent Agreements, Judge Baca ruled:

> The application for temporary restraining order is denied.  It finally seemed to be clear to me that there is no dispute as to the validity of the arbitration agreement.  The concerns that you may have as to whether or not you've had enough time to do discovery and flesh out the issues, you can take that before the arbitrators. If they want to give you more time, they can give you more time, but that's not an issue as to whether or not this should proceed to arbitration.  So the restraining order is denied.
> Please submit an order that reflects this ruling.[26]

     Thereafter, Southwest Reinsure, Inc. "appeared briefly but declined to participate in the arbitration or present any evidence to support any position contrary to the Petitioners."[27]  While there is no transcript of the arbitration hearing, or at least none presented to the Court, the letter decision of the arbitrators indicates that they heard testimony from auto dealers and received exhibits into evidence.  The arbitrators awarded the Agents the sum of $4,220,783.00.

     On September 21, 2010, the Agents filed in this Court a "Motion to Confirm Arbitration Award" pursuant to the Federal Arbitration Act ("FAA herein), 9 U.S.C. §§ 1-14.[28]  On October 1, 2010, they removed the state court declaratory judgment action to this Court, and moved to dismiss the complaint in that action.[29] Southwest Re, Inc. filed an amended complaint in the now

---

[25]Ex. 9, p. 5, Docket No. 9, 10cv880.

[26]Ex. 9, p. 24, Docket No. 9, 10cv880.

[27]Ex. H, Docket No. 1, 10cv880.

[28]Docket No. 1, 10cv880.

[29]Docket Nos. 1, 4, 10cv935.

removed state court action, adding Southwest Reinsure, Inc. as a party-plaintiff, and asserting additional causes of action.[30]

## Jurisdiction and Venue

The parties in this lawsuit are completely diverse and the amount in controversy exceeds the required jurisdictional amount.  Thus, this court has diversity jurisdiction to hear this case.  28 U.S.C. § 1332.[31]  Venue is proper because the arbitration was held in New Mexico.  Ansari v. Qwest Communications Corp., 414 F.3d 1214, 1219-1220 (10th Cir. 2005).

## The Federal Arbitration Act

The FAA governs arbitration provisions contained in contracts "evidencing a transaction involving commerce"[32] and supplants any inconsistent state law.  Southland Corp. v. Keating, 465 U.S. 1, 14-16 (1984).  The phrase "involving commerce," as used in § 2 of the FAA, which determines the scope of the Act, is not to be construed narrowly. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401-402 n.7 (1967).  The Court in Prima Paint noted that Congress indicated in the legislative history of the Act that, " 'commerce reaches not only the actual physical interstate shipment of goods, but also contracts relating to interstate commerce.' " Id. (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)).

The Agent Agreements govern sales commissions; therefore, they involve commerce.  SWRE's reinsurance business, including the payment of out-of-state agents, is conducted across state lines and therefore affects interstate commerce.  Accordingly, the arbitration provision at issue

---

[30]Docket No. 7, 10cv935.

[31]The Civil Cover Sheet filed by the Agents alleges Federal Question as the basis for subject matter jurisdiction. (Ex. 1, Docket No. 1, 10cv880).  The FAA "does not create any independent federal-question jurisdiction."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25, n.32(1983).

[32]9 U.S.C. § 2 (2003).

is governed by the FAA.

The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). Thus, issues of arbitrability are questions of federal substantive law. Southland Corp., 465 U.S. at 12. The FAA requires that "questions of arbitrability ... be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25. The federal policy favoring arbitration, however, does not change the long established principle that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not so agreed to submit. AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986). Rather, the FAA requires "arbitration proceed *in the manner provided for in [the parties'] agreement*." Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475 (1989) (quoting 9 U.S.C. § 4) (emphasis by the Court). In Volt, the Court made clear that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Id. at 476.

### Pre-arbitration Judicial Determination of Arbitrability

Whether a contract creates a duty to arbitrate a particular grievance is an issue for the court to determine. AT&T Technologies, 475 U.S. at 649; Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998). SWRE contends that the dispute with the Agents improperly proceeded to arbitration prior to a judicial determination that it was arbitrable.

The issue of arbitrability was submitted to Judge Baca.  Judge Baca, construing the agreement before him and hearing the arguments of SWRE's counsel, determined that the Agent Agreement included an agreement to arbitrate and refused to enjoin the scheduled arbitration. This is consistent with both the FAA[33] and the New Mexico Uniform Arbitration Act.[34]  Nothing more was required.

Accordingly, I find that the issue of arbitrability was presented to and decided by a court prior to the arbitration hearing.

### Agreement to Arbitrate

In essence, SWRE claims that Judge Baca "got it wrong," and that he should have found that there was no legally enforceable contract to arbitrate.  State contract law governs whether a valid agreement to arbitrate exists.  DeArmond v. Halliburton Energy Services, Inc., 134 N.M. 630, 634, 81 P.3d 573, 577 (Ct. App. 2003).  For a contract, including an arbitration contract, to be valid and enforceable, it must be supported by an offer, an acceptance, consideration and mutual consent.  Id. Because of the strong presumption in favor of arbitration, Nolde Brothers, Inc. v. Local 358, Bakery & Confectionary Workers Union, AFL-CIO, 430 U.S. 243 (1977), any ambiguity in a contract with regard to the parties' duty to arbitrate their grievances must be resolved in favor of arbitration. Moses H. Cone, 460 U.S. at 24-25.

SWRE has never contended that there was no contract with the Agents, or that the contract

---

[33]9 U.S.C. § 4  provides that upon motion alleging that a party has failed or refused to arbitrate, the court "shall hear  the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

[34]NMSA 1978 § 44-7A-8(b) provides that "[o]n motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue.  If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate."

did not contain an arbitration agreement.  Rather, SWRE contends that the dispute over commissions was not arbitrable because:

1)      a condition precedent to arbitration, that there be  "an irreconcilable difference of opinion" between the parties, was not fulfilled;

2)      commission fee schedules were never attached to the Arbitration Agreements, removing disputes over commissions from the scope of the Arbitration Agreements; and

3)      SWRE was  not made aware of the particulars of the Agents' damages claim.

"To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry."  Cummings v. FedEx Ground Package System, Inc., 404 F.3d 1258, 1261 (10th Cir. 2005) (citing  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001)).

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. *Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.*

Louis Dreyfus Negoce S.A., 252 F.3d at 224 (Emphasis added; internal citations and quotations omitted).

A broad arbitration provision is one that "refer[s] all disputes arising out of a contract to arbitration."  Cummings, 404 F.3d at 1262.  A narrow arbitration provision "manifest[s] an intent to narrowly limit arbitration to specific disputes regarding the termination" of a contract.  Id.

11

> [I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in the favor of coverage." [Citations omitted].  Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performances of any obligation hereunder . . . ." (citation omitted).

AT&T Technologies, 475 U.S. at  650.

The plain language of the arbitration provision contained in the Agent Agreements requires the parties to arbitrate any "irreconcilable difference of opinion (which) should arise between the parties as to the interpretation of this agreement. . ."  I have little trouble determining that this is a broad provision, and therefore find that it covers disputes as to the payment of commissions.[35]

The Agent Agreements contemplate payment of commissions to the Agents  in return for the services they rendered to or on behalf of SWRE.  The Agreements referred to a "Schedule A" which

> outlines the commissions AGENT will be receiving for each account AGENT signs up.  AGENT is responsible for providing to ADMINISTRATOR [Southwest Re] an addendum to this agreement for each new account.  These Addenda will follow the format of the attached Schedule A and will be signed by AGENT before being submitted to ADMINISTRATOR.[36]

No Schedule A or any addenda thereto were ever utilized by the parties in calculating commission payments.  However, SWRE paid commissions to the Agents from 2004 until January 1, 2010, when, according to SWRE, one service contract provider, Credit Acceptance Corporation ("CAC" herein), moved its accounts "in house."[37]  SWRE argues that this course of conduct removes disputes

---

[35]See  Newmont USA Ltd, v. Insurance  Co. of  North America, 615 F.3d 1268, 1276, n.5 (10th  Cir. 2010), ("Generally, when an arbitration provision provides for any dispute 'arising out of' a particular contract, the provision is construed broadly to suggest that a given dispute is arbitrable.")

[36]Exhibits A, B and C, ¶11, Docket No. 1, 10cv880.

[37]¶¶ 28-45, Docket No. 7, 10cv935.

over the payment of commissions from the arbitration provision.

I find that the arbitration provision in the Agent Agreements covers irreconcilable differences as to the payment of commissions, regardless of the mechanism utilized by the parties to determine the amount of those commissions. See Chelsea Family Pharmacy, PPLC, v. Medco Health Solutions, Inc., 567 F.3d 1191 (10th Cir. 2009) (Arbitration provision in the parties' contract provided for arbitration of disputes "arising out of or relating to payments" required arbitration of disputes related to reimbursements).

SWRE's other two contentions do not change this result. It is clear that an irreconcilable difference had arisen between the parties. SWRE stopped paying commissions to the Agents. The Agents claimed commissions were due to them. There was no middle ground. Although SWRE claims it was not aware of the particulars of the Agents' claims, it was aware that the dispute was over the non-payment of commissions.[38] There is no requirement in the arbitration clause of the Agent Agreements which requires either party to provide the other with additional information regarding claims or damages.

Accordingly, I find that SWRE was contractually obligated to arbitrate this dispute.

### Parties to the Arbitration

The Agent Agreements were between the Agents and "Southwest Re." The arbitration award was against "Southwest Reinsure, Inc."[39] As previously stated, Southwest Reinsure, Inc. is a wholly-owned subsidiary of Southwest Re, Inc.[40]

---

[38]See statement of SWRE's counsel at the hearing for TRO: "[T]he dispute between the defendants and Southwest Re Insurance is a change in company policy that altered the manner in which commissions were paid...." (Docket No. 9, Ex. 9, p. 5, 10cv880).

[39]Ex. H, Docket No. 1, 10cv880.

[40]¶ 14, Docket No 7, 10cv880.

The Agents' letter demand for arbitration was mailed to "Southwest Reinsure, Inc." at the address specified in the arbitration provision for giving such notice.[41] Ms. Torres' letter of June 21, 2010 responding to the demand for arbitration was written on "Southwest Re" stationery, and did not state that the notice had been sent to the wrong party. During the hearing on Motion for Temporary Restraining Order, counsel for SWRE referred to his client as "Southwest Re Insurance."[42] Counsel raised no objection to the arbitration proceeding on the grounds that the notice of arbitration was sent to the wrong entity. Southwest Re, Inc. and Southwest Reinsure, Inc., are represented by the same attorneys in the proceedings before this Court.

A party not formally named in an arbitration proceeding is bound thereby if that party was, in fact and in law, a party to the proceedings. Ormsbee Dev. Co. v. Grace, 668 F.2d 1140, 1149 (10th Cir. 1982).

Southwest Reinsure, Inc., the only party as against which the Agents have sued to confirm the arbitration award, is bound by the arbitration proceedings.

## Vacature of the Arbitration Award.

Courts may vacate arbitration awards for reasons enumerated in 9 U.S.C. § 10, or for a handful of judicially created reasons. Burlington Northern and Santa Fe Ry. Co. v. Public Service Co. of Oklahoma, ___ F.3d ___, 2010 WL 502325, *4 (10th Cir. 2010); Denver & Rio Grande West. R.R. Co. v. Union Pac. R.R. Co., 119 F.3d 847, 849 (10th Cir.1997).[43] Section 10 allows a court to vacate an arbitration award only where (1) the award was procured by corruption, fraud or

---

[41]Ex. A-C, Introductory paragraph, Docket No. 1, 10cv880.

[42]See, e.g., pp. 3-5, Ex. 9, Docket No. 9, 10cv880.

[43]Although some courts have held that the Supreme Court's decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008) rendered statutory grounds the exclusive grounds under which to seek vacature of an arbitration award, I will address all grounds raised by SWRE.

undue means; (2) there was evident partiality or corruption on the part of the arbitrators; (3) the arbitrators were guilty of misconduct; or (4) the arbitrators exceeded or imperfectly executed their powers.  9 U.S.C. § 10(a).  Judicially created grounds for vacating an arbitration award are violation of pubic policy, manifest disregard of the law[44] and denial of a fundamentally fair hearing.

In addition, SWRE asserts that the arbitration award should be vacated arguing that certain provisions of the New Mexico Uniform Arbitration Act were not followed and that the Agents were required to seek Federal Court intervention pursuant to 9 U.S.C. § 4 once they were advised that SWRE objected to the arbitration.

### Statutory Grounds for Vacature under 9 U.S.C. § 10(a)

SWRE contends that all four statutory grounds for vacature apply in this case, the factual predicates for each overlapping to some degree.  The following conduct is identified as the bases for vacature:

1)      The Agents failed to notify SWRE as to the exact nature of the grievance, preventing SWRE from adequately preparing a defense thereby depriving SWRE of due process and constituting "fraud, corruption and undue means."

2)      There was evident partiality or corruption on the part of the arbitrators, evidenced by their reviewing a "script" provided by the Agents at the proceeding; the

---

[44]Some courts have decided that manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA.  See, e.g., Citigroup Global Mkts., Inc. v. Bacon, 562 F.3d 349, 350, 355 (5th Cir. 2009); Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 n.3 (1st Cir. 2008).  The Ninth Circuit has held that manifest disregard remains a valid ground for vacatur in that circuit because it had already treated manifest disregard as a part of § 10(a)(4).  Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1290 (9th Cir. 2009), cert. denied, --- U.S. ----, 130 S.Ct. 145 (2009).   The Tenth Circuit has not addressed whether judicially created grounds for vacature, such as "manifest disregard of the law" survive the decision of the Supreme Court in Hall Street Associates, supra.  See DMA Int'l, Inc. vs. Qwest Communications International, Inc., 585 F.3d, 1341, 1345 n.2 (10th Cir. 2009), where the court declined to address the issue, but decided that "the abitrator did not act with manifest disregard of the law or in any other way that would justify vacature" of the arbitrator's award.

arbitrators had ex parte communications with the Agents' counsel; the lack of any rational basis for denying SWRE's request for adjournment; conducting the arbitration ex parte, and awarding outrageous damages.

3)      The arbitrators were guilty of misconduct in refusing to postpone the hearing; and

4)      The arbitrators exceeded their powers because the commissions at issue were not covered by the Arbitration Agreement, and because the arbitrators were not qualified to act as arbitrators in this matter.

There is nothing before the Court that remotely suggests fraudulent or corrupt behavior by the Agents or the arbitrators.  SWRE was aware the Agents were seeking commission payments.  SWRE knew that only one type of commission payment had been terminated.  The Agents identified by name managers at SWRE with personal knowledge of the dispute.  SWRE had more than ample opportunity to prepare a defense to the Agents' claims.  I find that there are no grounds presented for vacating the arbitration award under 9 U.S.C. § 10(a)(1).

A court may set aside an arbitration award where there is evident partiality in the arbitrators.  9 U.S.C. § 10(a) (2).  The burden of proving partiality rests with SWRE, who asserts this claim.  Reed & Martin, Inc. v. Westinghouse Electric Corp., 439 F.2d 1268, 1275 (2d  Cir. 1971); Cal-Circuit ABCO, Inc., v. Solbourne Computer, Inc., 848 F. Supp. 1506, 1509 (D. Colo. 1994).  "To set aside an award for arbitration partiality, '[t]he interest or bias . . . must be direct, definite and capable of demonstration rather than remote, uncertain or speculative'."  Health Services Management Corp. v. Hughes, 975 F.2d 1253, 1264 (7th Cir. 1992) (citations omitted).

SWRE has not provided to the Court the "script" provided to the arbitrators, nor have they described  the "script" in any way that would allow this Court to find that its use evidences partiality

16

by the arbitrators.[45]  It is axiomatic that the Agents were permitted to present their side of the dispute to the arbitrators.  The arbitration provisions in the Agent Agreements do not limit the information that can be provided to the arbitrators.  No partiality is suggested by the allegation that the arbitrators were provided materials by the Agents.

The *ex parte* communications alleged to have taken place were not *ex parte*, nor were they inappropriate.  An *ex parte* communication is one conducted "without notice to or argument from the adverse party."  Black's Law Dictionary (9th ed. 2009).  The Agents' counsel sent e-mails to the arbitrators on September 2nd and September 6th, 2010, with copies of the e-mails sent simultaneously to SWRE's counsel.  The e-mails advised the arbitrators of SWRE's filings in the New Mexico state district court seeking to stop the arbitration hearing, and requested that the arbitrators not cancel their travel plans without a court order prohibiting the hearing from going forward.[46]  I find that the e-mails from the Agents' counsel to the arbitrators do not support vacature of the arbitration award under 9 U.S.C. § 10(a).

Section 10(a)(3) permits vacature of an arbitrator's award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party may have been prejudiced."  However:

---

[45]In their Amended Complaint, SWRE describe this "script" as follows:

¶ 138:   Agents' counsel submitted an evidence binder to the arbitrators prior to the commencement of the Arbitration Proceeding (the "Agents' Arbitration Book").

¶ 139:   Agents, for the first time, disclosed its claims and evidence to SWRE's counsel at the initiation of the Arbitration Proceeding by delivery of the Agents' Arbitration Book. Counsel for SWRE rejected Agents' Arbitration Book.

¶ 140:   The lead arbitrator initiated the Arbitration Proceeding by reading from a script contained in the Agents' Arbitration Book.

Docket No. 7, 10cv935.

[46]Exs. 6 & 7, Docket No. 5, 10cv880.

[b]ecause the primary purpose for the federal policy of favoring arbitration is to promote the expeditious resolution of disputes, a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited. See Raiford v. Merrill Lynch, Pierce, Fenner & Smith, 903 F.2d 1410, 1413 (11th Cir. 1990) ("When the parties agreed to submit to arbitration, they also agreed to accept whatever reasonable uncertainties might arise from the process."); Fairfield & Co. v. Richmond F.& P.R.R. Co., 516 F. Supp. 1305, 1313-14 (D.D.C. 1981) ("[A]ssuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere with the award on these grounds.").

ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1463-1464 (10th Cir. 1995).

The standard for evaluating the decision not to postpone the arbitration hearing is an abuse of discretion. See Schmidt v. Finberg, 942 F.2d 1571, 1573 (11th Cir. 1991). To meet this standard, SWRE must prove by clear and convincing evidence that the arbitrators had no reasonable basis for their decision not to grant a postponement. See In Re Time Constr. Inc., 43 F.3d 1041, 1045 (6th Cir. 1995); DVC-JPW Investors v. Gershman, 5 F.3d 1172, 1174 (8th Cir. 1993) ("if any reasonable basis exists for the arbitrators' decision not to postpone a hearing, we will not intervene."). An example of reversible error in refusing to grant a postponement is where a sudden, completely unforseen medical emergency prevents the attendance of an important witness. Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997).

Turning to the claim that the arbitrators conducted an *ex parte* hearing, this occurred not because of some defect or deficiency in the process of notification, but because of SWRE's unilateral act of refusing to participate in the arbitration.

SWRE was informed in June, 2011 of the Agents' demand for arbitration. SWRE thereafter chose to ignore rather than follow the provisions for arbitration contained in the Agency Agreements. SWRE could have filed its state court complaint weeks earlier and certainly could have participated in the arbitration subject to objections. SWRE was aware that the dispute was over

the non-payment of commissions.  SWRE was advised over a month before the arbitration hearing

of the identities of their own employees with information regarding the claim.  SWRE presented no

reasons to the arbitrators, nor to this Court, why those employees could not appear to give testimony

at the arbitration hearing.  SWRE now claims that its own records would show commissions were

not owed.  However, they elected not to present this evidence at the arbitration.[47]  Rather than do

anything to protect its interests, SWRE simply chose to "go home."

> While "[a]ll parties in an arbitration proceeding are entitled to notice and an opportunity to
> be heard," Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649,
> 651 (5th Cir. 1979), due process is not violated if the hearing proceeds in the absence of one
> of the parties when that party's absence is the result of his decision not to attend. Int'l Ass'n
> of Heat and Frost Insulators and Asbestos Workers v. General Pipe Covering, Inc., 613 F.
> Supp. 858, 860 (D. Minn. 1985).

Bernstein Seawell & Kove v. Bosarge,  813 F.2d 726, 729 (5th Cir. 1987).  See also El Dorado Sch.

Dist. No. 15 v. Continental Cas. Co., 247 F. 3d 843, 847 (8th Cir. 2001) (No misconduct by

arbitrator in denying motion for continuance.  Appellees' failure to participate in hearing was the

result of their decision not to attend the proceeding.)

The *ex parte* nature of the arbitration hearing was solely due to SWRE's decision not to

participate.  SWRE did not establish sufficient cause for the arbitrators to postpone the hearing.

SWRE contends that the arbitrators exceeded their power because the commissions at issue

were not covered by the Agent Agreements thereby mandating vacature under 9 U.S.C. § 10(a)(4).

This issue has been thoroughly discussed supra. At 10-13.

SWRE contends that the arbitrators exceeded their powers because they were not chosen in

conformity with the provisions of the arbitration clause and therefore had no power to decide the

---

[47]SWRE refer in briefing to a "separate contractual arrangement between Credit Acceptance Corporation and
affiliates of "Southwest Reinsure" as governing the commissions at issue.  (Docket No. 35, p. 9, 10cv880).
Suffice it to say there is no contention that the Agents were parties to this separate agreement, and no such
document was presented to the arbitrators or provided to the Court.

matters at issue.

Section 5 of the FAA provides that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed...." A court may vacate an award when arbitrators are not chosen in conformity with the procedures set forth in the arbitration agreement.  <u>Bulko v. Morgan Stanley DW Inc.</u>, 450 F.3d 622, 625 (5th  Cir. 2006) ("Courts do not hesitate to vacate an award when an arbitrator is not selected according to the contract-specified method.").  In this case, however, the Agents followed to the letter the procedure set forth selecting the arbitrators.

SWRE objects to the qualifications of the arbitrators, and states that upon information and belief, they do not meet the criteria of "executive officers or retired officers of insurance companies."[48]   The arbitration provision does not define the term "executive officer," nor does it specify any particular type of  type of insurance company with which the arbitrators are to have been affiliated.   The following definitions are found in Blacks Law Dictionary (9th  ed. 2009):

> EXECUTIVE. . . . 2. A corporate officer at the upper levels of management. — Also termed executive officer; executive employee.
>
> EXECUTIVE EMPLOYEE.   An employee whose duties include some form of managerial authority and active participation in the control, supervision, and management of the business. — Often shortened to executive.

SWRE submitted to this Court information downloaded from the internet regarding the arbitrators.  According to this information, Mr. Dulick is Manager of Operations of Chicago Title Insurance Company in Kansas City, Missouri,  Mr. Hurst is Vice-President of Missouri Farm Bureau Insurance Services, and. Mr. Goodside is the Vice President and Houston area manager for Chicago

---

[48]Docket No. 35, p. 13-14, 10cv880.

Title Insurance Company.[49]  It appears that this information is what was publically available at the time the arbitrators were named.  Therefore, the Court rejects SWRE's unsupported contention that they had no opportunity to determine the qualifications of the arbitrators prior to the arbitration.

SWRE did not object to the qualifications of the arbitrators during their appearance at the arbitration hearing.[50]  SWRE raised no such objection until it responded to the Agents' Motion to Confirm Arbitration Award.[51]  Objections to the composition of arbitration panels must be raised at the time of the hearing.  Bosarge, 813 F.2d at 732.  Failure to do so results in waiver of the right to challenge the election of the arbitrators.  Id.

Finally, I find that based on the information provided by SWRE, the arbitrators did meet the definition of executive officers of insurance companies as described in the arbitration clause of the Agent Agreement.

SWRE's disagreement with the amount of damages, and its contention that the award was "outrageous" are not grounds for vacating the award.  Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 642 (9th Cir. 2010);  Koch Oil S.A. v. Transocean Gulf Oil Co., 751 F.2d 551, 554 (2d Cir. 1985).  In this case, the arbitrators stated the following reasons for their award:

> The Respondent (Southwest Reinsure Inc.) has valid contracts in force with (the Agents, which) remain in force as confirmed by the Respondent in exhibit 6.
>
> Respondent was provided adequate notice of the cause of the dispute between the parties confirmed by email between Petitioner and Respondent, in addition to the legal notice of Arbitration provided by Petitioner's (sic) counsel . . .Respondent's failure to respond or negotiate with Petitioners (sic) request to resolve the dispute created irreconcilable differences of opinion.

---

[49] Exs. 5-3, 5-4 and 5-5, Docket No. 5, 10cv880.

[50] ¶143, Docket No. 7, 10cv935; Docket No. 5, pp. 6-7, 10cv880.

[51] Docket No. 37, p. 6, 10cv880.

Respondent's counsel appeared briefly but declined to participate in the arbitration or present any evidence to support any position contrary to the Petitioners.

Respondent had Agent Agreements with each of the Petitioners.  All three Agent agreements were materially identical.  Petitioners stated that the Respondent drafted said Agent Agreements.  We find the Agreements to be valid and enforceable.

*Agent Agreements provide that the Respondent will pay Petitioners commissions for the sales of various products sold through Automobile dealers.  Respondent did pay commissions through December 31, 2009.  No commissions have been paid since January 1, 2010, although commission charge backs against the agents on issued and subsequently cancelled products have continued into 2010.*

*According to testimony of designated Automobile dealers there have been no changes to the contracts currently submitted by said dealers that indicate a change of the Petitioner's (sic) status as Appointed Agent of Southwest Re-insurance.[52]*

Accordingly, I find that the arbitrators provided rationale and cited to facts which support their award.

## Judicially Created Grounds for Vacating Arbitration Awards

I do not need to decide whether 9 U.S.C. § 10 provides the exclusive grounds for vacating an arbitrator's decision because SWRE has failed to demonstrate  manifest disregard of the law, violation of public policy, or that it failed to receive a fundamentally fair hearing.

Manifest disregard of the law has been defined as willful inattentiveness to the governing law.  DMA Intern., Inc. v. Qwest Communications Intern., 585 F.3d 1341, 1344 (10th Cir. 2009). "Mere errors in an arbitrator's factual findings, or in his interpretation and application of the law do not justify vacature."  Id. at 1344-1345.   A finding of manifest disregard "means the record will show the arbitrators knew the law and explicitly disregarded it.  Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932 (10th Cir. 2001).   Merely disagreeing with the arbitrator's decision is not a basis for vacating the arbitration award for a manifest disregard of the law.  SWRE has the burden of

---

[52]Ex. H, Docket No. 1, 10cv880 (emphasis added).

producing evidence to support its claim of manifest disregard.  See Youngs v. Am. Nutrition, Inc., 537 F.3d 1135, 1143 (10th Cir. 2008) (holding that it is "the burden of the [party seeking to vacate an arbitration award] to provide the ... court with the evidence to support their arguments for vacating the arbitrator's award.").  The lack of  any record of the arbitration hearing demonstrates that SWRE cannot meet its burden of proving that the arbitrators knew the law and explicitly disregarded it.

All that SWRE  presented is an argument that the commissions at issue are not covered by the arbitration provisions of the Agent Agreements, a position the Court has rejected, and its subjective view that the amount awarded is "outrageous."  SWRE provided no facts or allegations to suggest that the award by its nature or size was the result of a knowing disregard of the law.  Mere disagreement with the arbitrators' decision is not a reason to vacate the arbitration award for manifest disregard of the law.  Hicks v. Cadle Co., 355 F. App'x 186, 2009 WL 4547803, *10 (10th Cir. 2009) (unpublished opinion); see also DMA Int'l., Inc., 585 F.3d at 1345.  (The arbitrator's factual findings may not be overturned because the evidence was conflicting.)

### Public Policy

Courts may vacate an arbitration award which violates public policy.  United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc., 484 US 29, 42 (1987).  No public policy concern has been identified by SWRE nor does this Court find one.

### Fundamentally Fair Hearing

A fundamentally fair arbitration hearing " requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias."  Sheldon v. Vermonty, 269 F.3d 1202, 2007 (10th Cir. 2001) (quoting Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co., 22 F.3d 1010, 1013 (10th

Cir.1994)).  SWRE had adequate advance notice of the arbitration hearing and the opportunity to present relevant and material evidence and argument to the arbitrators, which it declined.  There is no indication of bias on the part of the arbitrators.

### Procedural Provisions of the New Mexico Uniform Arbitration Act

SWRE contends that the Agents violated two provisions of the New Mexico Uniform Arbitration Act, and that these violations are grounds for vacature of the award.  Section 44-7A-24(a)(6) provides that upon motion, a court "shall vacate an award made in the arbitration proceeding if . . . the arbitration was conducted without proper notice of the initiation of an arbitration as required in . . .[44-7A-10 N.M.S.A. 1978] so as to prejudice substantially the rights of a party to the arbitration proceeding." Section 44-7A-10 states:

> (a)  A person initiates an arbitration proceeding by giving notice in a record to the other parties to the agreement to arbitrate *in the agreed manner between the parties . . . the notice must describe the nature of the controversy and the remedy sought*. (Emphasis added.)

I decline to decide whether the provisions of the New Mexico Uniform Arbitration Act apply to an action brought under the FAA.  However, even if these provisions do apply, it is undisputed that the notice provided to SWRE complied with N.M.S.A. § 44-7A-24(a)(6) and§ 44-7A-10.  The Agents followed the specified manner set out in the Agent Agreements for initiating arbitration.  The letters of June 21 and August 4, 2010 describe the nature of the controversy (disputed obligation to pay commissions; termination of commissions) and the remedy sought (commission payments).  Further, I reject SWRE's contention that the Agents were required to provide a more detailed description of their damage claim prior to the arbitration hearing.  As stated supra at 13, that level of disclosure was not required by the arbitration provision in the Agency Agreements, nor is it required by §44-7A-10.

24

## Duty to Arbitrate Under 9 U.S.C. § 4

SWRE contends that the arbitration hearing was invalid because the Agents had a duty to cancel the arbitration proceeding and move to compel arbitration under 9 U.S.C. § 4 once they were aware of SWRE's refusal to arbitrate.

Section 4 permits a party, aggrieved by the failure or refusal of another to arbitrate, to petition a United States district court with jurisdiction to enter an order compelling arbitration.  It does not mandate this procedure.[53]  Bosarge, 813 F.2d 726 at 733.  ("The procedural requirements of  9 U.S.C. §4, however, are permissive, not mandatory.");  Val-U Const. Co. of S.D. v. Rosebud Sioux Tribe, 146 F.3d 573, 580 (8th Cir. 1998) ("Section 4 of the FAA is clearly permissive.  As such, Val-U was not required to petition the district court for an order compelling the Tribe to participate in the arbitration proceeding.").

There is no merit to SWRE's argument that the Agents were required to seek an order  to compel arbitration prior to proceeding with arbitration.

## Agents' Motion to Dismiss

Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which it can grant relief. Under Rule 12(b)(6), a motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976) (citing  Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969)). When ruling on a motion to dismiss, the Court must accept as true well-pleaded factual allegations, but also consider whether "they plausibly give rise to an entitlement to relief." Barrett v. Orman, 373 F. App'x. 823, 825 (10th

---

[53]"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court .. . for an order directing that such arbitration proceed . . ."  (Emphasis added).

Cir. 2010) (unpublished opinion) (quoting Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949-50 (2009). It is not the Court's role to weigh potential evidence that the parties might present a trial, but rather to determine whether the plaintiff's complaint states a legally sufficient claim upon which the Court can grant relief.  See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).   A court may consider all documents to which the complaint refers, central to the plaintiff's case, the authenticity of which is not disputed.  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  Accordingly, in evaluating the SWRE's complaint, I will consider those documents referred to in the Amended Complaint and which are attached to the Motion to Dismiss.[54]

### Malicious Abuse of Process

Count II of SWRE's Amended Complaint alleges malicious abuse of process because SWRE had "no probable cause to believe that conditions precedent to an arbitrable matter has been satisfied."[55]   SWRE alleged that prior to demanding arbitration, the following conditions precedent had to be met:  1) an irreconcilable difference of opinion, 2) negotiations or discussions relating to the interpretation of the Agent Agreement, 3) assertion by the Agents of an interpretation of a provision of the Agent Agreement that could form the basis of an irreconcilable difference, 4) a mutual determination by the parties that their differences were irreconcilable.[56]   The latter three "conditions precedent" are not included in the arbitration provision of the Agent Agreements.

Under New Mexico law, arbitration proceedings are considered judicial proceedings for the purpose of the tort of malicious abuse of process.  Durham v. Guest, 145 N.M. 694, 698, 204 P.3d

---

[54]The Amended Complaint refers to the Agents Agreements, and correspondence and/or e-mails of June 21, 2010, July 7, 2010, July 27, 2010, August 4, 2010, August 6, 2010, and September 2, 2010 (2).

[55]¶¶ 227-234, Docket No. 7, 10cv935.

[56]Id., ¶¶ 78-81.

19, 23 (2009).  The elements of this tort are:

> (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) "an irregularity or impropriety suggesting extortion, delay, or harassment[,]" or other conduct formerly actionable under the tort of abuse of process.  Fleetwood Retail Corp. of N.M., 2007-NMSC-047, ¶ 12, 142 N.M. 150, 164 P.3d 31 (citation omitted). A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt.  DeVaney, 1998-NMSC-001, ¶ 28, 124 N.M. 512, 953 P.2d 277 (listing examples of abuse of process). Finally, we emphasize that the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts. Id. ¶ 19.

Durham, 145 N.M. at 702, 204 P.3d at 27.

Durham was a bad faith action, in which the plaintiffs sued Guest, the attorney for Allstate, their auto insurer.  The Durhams alleged that in the course of an arbitration over their uninsured motorist claim, Guest maliciously issued subpoenas for the Durhams' employment and medical records for an illegitimate purpose, in violation of a protective order issued by the arbitrators, for the purpose of ruining their reputations, causing them to lose their employment, inflicting humiliation and emotional distress, invading their privacy, retaliating against them for refusing to accept Allstate's previous settlement offer, and to coerce them into giving up their lawful right to benefits under the uninsured motorist policy.

No similar facts concerning procedural irregularities, a misuse of procedural devices such as discovery, subpoenas, and attachments, or wrongful use of proceedings, such as an extortion attempt, have been alleged in this case.

Southwest Re entered into Agent Agreements with each Agent, and these Agreements provided for an arbitration process in the event of irreconcilable differences.  The initiation of the

arbitration proceeding by the Agents was not a "procedural irregularity."  The parties had been unable to reconcile their difference as of January 1, 2010, when the disputed commissions were ended.  The Agents, in correspondence to SWRE, described the area of dispute, named arbitrators in accordance with the terms of the arbitration provision, and provided the names of witnesses to SWRE.

I also find that record establishes that the Agents had probable cause to initiate the arbitration process.  "Probable cause in the malicious-abuse-of-process context means a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury.'" Mosley v. Titus, ___ F.Supp.2d ___ 2010 WL 4927941, *20 (D. N.M. 2010) (quoting Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 154, 164 P.3d at 36.)  The standard does not require certainty.  Mosley at *22, (citing Guest v. Berardinelli, 145 N.M. 186, 190, 195 P.3d 353, 357 (Ct. App. 2008)).  The correspondence between the Agents' attorney and SWRE establishes that the Agents and their attorney had a reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that their claims in the arbitration could be establshed to the satisfaction of the arbitrators.

Construing the tort of malicious abuse of process narrowly, as I am required to do, see Weststar Mortgage Corp. v. Jackson, 133 N.M. 114, 61 NM 823, 828 (2002), I find that  SWRE's claim of malicious abuse of process does not state a cause of action for which relief may be granted.

### Waiver of Contract

Count III of SWRE's amended complaint alleges that the Agents impliedly waived their contractual right to arbitration through their conduct, that by their conduct they mislead SWRE into an honest and reasonable belief that such a waiver was intended, and that SWRE were prejudiced

and suffered damages thereby.[57]   In its Response to the Agents' Motion to Dismiss the Amended

Complaint, SWRE argue that even if there was an enforceable and binding agreement to arbitrate

at one time, the Agents had waived their contractual right to arbitration at the time this action arose.

The right to arbitration may be waived. However, this generally involves situations where

that party has engaged in substantial litigation prior to asserting a right to arbitration.[58]  That is not

the situation before the Court.

What SWRE is actually asserting is a waiver of contract claim, _i.e.,_ that by not attaching

schedules to their Agent Agreements, SWRE were "lulled" into believing that the Agents would not

assert a right to arbitration once a disagreement arose over commissions.

Waiver of contract is generally a defense, not a cause of action. [59]

In a basic sense, the concept of "waiver" as an excuse for nonperformance is an
equitable doctrine designed to prevent the waiving party from lulling another into a
belief that strict compliance with a contractual duty will not be required, and then
either suing for noncompliance or demanding compliance for the purpose of
avoiding the transaction.

13 Williston on Contracts, § 39:15 (4th ed. 2010).

At the time the Agents invoked the arbitration provisions, SWRE could not have been

misled.  No conduct by the Agents could have "lulled" SWRE into a reasonable belief that the

---

[57]¶¶235-241, Docket No. 7, 10cv935.

[58]See  Peterson v. Shearson/American Exp. Inc., 849 F.2d 464 ,467-8 (10th Cir. 1988) (The factors examined
in determining whether the right to arbitration has been waived are: "(1) whether the party's actions are
inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked"
and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an
intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or
delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a
counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g.,
taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6)
whether the delay "affected, misled, or prejudiced" the opposing party.") (Citation omitted.)

[59]Docket No. 27, p 15, 10cv880.

Agents had waived their right to arbitration under the Agent Agreements so as to excuse SWRE's failure and refusal to participate in the arbitration.  The Agents gave notice that they were invoking the arbitration provision of the Agent Agreements in strict conformity with the terms of the Agreements.   Thereafter, the Agents consistently represented that they were proceeding to arbitration.

SWRE's claim of waiver does not state a cause of action upon which relief can be granted.

## Breach of the Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing applies to all contracts.   Sanders v. FedEx Ground Package System, Inc., 144 N.M. 449, 442, 188 P.3d 1200, 1203 (N.M. 2008).  It is breached "only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party."  Id. (quoting  Azar v. Prudential Ins. Co. of Am., 133 N.M. 669, 685, 68 P.3d 909, 925 (Ct.  App. 2003)).  The covenant cannot be used to overcome express terms of the contract. Id.

Count IV of SWRE's Amended Complaint asserts Breach of the Implied Covenant of Good Faith and Fair Dealing.[60]  In resisting the Agents' Motion to Dismiss, SWRE contends that the Agents violated this covenant by utilizing the arbitration process in such a way as to "den(y) SWRE the ability to participate in dispute resolution in any sort of meaningful fashion."  SWRE then refers to the pre-hearing communications between it and the Agents, and  asserts that SWRE was not made aware of the claims against it, and that its requests for information about the claims were rebuffed.[61]

The arbitration provision set out specific and unambiguous terms for naming arbitrators and for the timing and location of the arbitration.  The arbitration provision does not require any

---

[60]¶242-245, Docket No. 7.

[61]Docket No. 27, p. 15-16, 10cv880.

discovery or other disclosure prior to the arbitration hearing.  Nonetheless, the Agents advised SWRE that the dispute was over commissions, and identified witnesses employed by SWRE who had knowledge of the dispute.

SWRE's claim of breach of the covenant of good faith and fair dealing does not state a cause of action upon which relief can be granted.

**Conclusion**

**IT IS THEREFORE ORDERED**:

1) The Motion of  MSE Distributing, Inc., Autolady, Inc., John Sullivan, d/b/a GMF Enterprises to Dismiss the Amended Complaint (Docket No. 8, 10cv935) is **GRANTED**.  The Amended Complaint is hereby dismissed with prejudice.

2. The Motion of Southwest Reinsure, Inc., and Southwest Re, Inc. to Vacate the Arbitration Award  (Docket No. 34, 10cv880) is **DENIED**.

3. The Motion of  MSE Distributing, Inc., Autolady, Inc., John Sullivan, d/b/a GMF Enterprises to Confirm the Arbitration Award dated September 8, 2010 (Docket No. 1, 10cv880) is **GRANTED**.  MSE Distributing, Inc., Autolady, Inc., John Sullivan, d/b/a GMF Enterprises are awarded judgment against Southwest Reinsure, Inc.,  in the total amount of $4,220,783.00, plus interest from the date of judgment at the legal rate.

4. All parties are to bear their own costs and attorney's fees.

**IT IS SO ORDERED**.

_____
Richard L.Puglisi
Chief United States Magistrate Judge

31